Bentley Kassal, J.
Plaintiffs move for summary judgment against defendants, British Overseas Corporation (“ BOAC ”) and Leo Lazar, doing business as Comet Travel Agency (“ Comet ”), to recover the sum of $86 as a refund for a portion of two airline tickets returned unused to BOAC. Comet failed to appear in this action. BOAC does not dispute that plaintiffs are entitled to the refund, but asserts in opposition to this motion that ‘ ‘ pursuant to airline custom and regulation ’ ’, it paid the claimed amount, less the travel agent’s commission, to Comet, as 1 ‘ agent ’ ’ for plaintiffs, and is thus no longer liable to plaintiffs. BOAC’s answer, however, does not refer to Comet as plaintiffs’ agent but states that BOAC paid the money to Comet pursuant to the said IATA regulations, contract and industry custom.
The essential facts are not in dispute; the issue to be resolved is whether Comet was plaintiffs’ agent in this transaction, and, if so, whether payment to Comet discharged BOAC from further liability for the refund.
The facts are these: On September 3,1970, plaintiffs purchased two round-trip BOAC tickets from Comet for this trip — New York/London/Amsterdam / Copenhagen / Stockholm/London/ New York. On September 19th, plaintiffs canceled the Stockholm leg of their trip and were issued a new ticket by British Europen Airways Corporation. On September 30, 1970, pursuant to BOAC instructions, plaintiff Robert Levine sent the two unused portions of the tickets directly to BOAC for a refund. His accompanying letter is as follows: “ We are enclosing herewith two (2) tickets (BEA No. 6942777 and No. 6942778), each for a refund in the sum of $43. Kindly forward your check in the sum of $86 to me at your earliest convenience, and oblige.”
BOAC, having determined that plaintiffs were entitled to a refund, sent back a form letter acknowledging plaintiffs ’ request and advising them that the claim had been processed through “ your travel agents ”, who would make the final settlement with them. Simultaneously, BOAC sent a check to Comet, made to Comet’s order, for $79.98, the refund due, less Comet’s retained commission of $6.02. This check was negotiated by Comet on October 13, 1970, but no payment has ever been received by plaintiffs.
In January, plaintiffs again wrote to BOAC to demand the refund. On January 19,1971, the day this action was instituted, BOAC wrote Comet enclosing a photocopy of its check and requesting that plaintiffs be paid. Since that time, BOAC has *768 repeatedly contacted Comet to make payment to plaintiffs, without avail.
In its answer BOAC does not cite any specific regulations of the International Air Transport Association, a voluntary association of international air carriers, or any binding custom, to substantiate its claim that it has satisfied its obligation of payment by making the refund to the travel agent. Nor do I have knowledge of any I AT A regulations regarding such refunds.
It is understandable, however, that BOAC and other airlines may have adopted this practice for their own benefit as the most convenient and feasible method of repayment since the travel agent retains a commission on the sale. But such practice, established unilaterally, could not bind plaintiffs or exonerate BOAC from liability to plaintiffs, simply on the ground of its being their own usual procedure. Plaintiffs returned their tickets directly to BOAC, not through their travel agent. They were not in the travel business, and no custom existed between them and BOAC or any other airline as to any further involvement of the travel agent beyond the initial purchase and issuance of the original BOAC tickets. Furthermore, the instructions in plaintiffs ’ letter are explicit to that effect. ‘ ‘ Kindly forward your check in the sum of $86 to me ” (emphasis added). Thus, the fact that BOAC might have followed its usual “ custom” will not immunize it from liability to plaintiffs, especially in view of plaintiffs’ express instructions.
The other theory on which BOAC relies is one of agency. It claims that its obligation has been discharged because a travel agent is the agent of the traveler and thus payment to the agent constitutes payment to the traveler, his principal. Plaintiffs, on the contrary, consider Comet to be BOAC’s agent.
When a person goes to a travel agency to book transportation and other arrangements with a vague request such as “ Get me a flight to London on the 15th and hotel reservations ”, it may very well be in that situation that the travel agent, who is essentially a “broker”, becomes the traveler’s agent; under those circumstances, he is not the agent of the airline, even though he may have a supply of blank official tickets supplied to him. (Antar v. Trans World Airlines, N. Y. L. J., Dec. 23, 1970, p. 15, col. 4 [App. Term, 2d & 11th Dists.] ; cf. Simpson v. Companie Rationale Air France, 42 111. 2d 496.) At most, the travel broker is an agent for an undisclosed principal and the agent alone is responsible to the traveler; the airline only becomes liable if it ratifies the transaction made by the broker. (Antar, supra.)
*769 In the two cases mentioned above, which are relied upon by BOAC as controlling in this action, the plaintiffs-travelers booked all-inclusive tours through their brokers and the airlines which they sued neither had notice of the flight arrangements nor had they received any of the money collected by the travel agencies. Under such circumstances, the respective courts refused to hold the airlines liable. In confining its conclusions to the facts, the Illinois court further significantly noted that “ There undoubtedly are many situations where [the travel broker] could become the agent of [the airline] ” (42 111. 2d 500). It has been recognized that once the travel agent pays over the fare to the carrier, the traveler has a valid claim for restitution against the carrier, (Unger v. Travel Arrangements, 25 A D 2d 40, 43, [1st Dept., 1966].)
In my opinion, once plaintiffs’ initial purchase of the tickets from Comet had been satisfactorily completed, any possible agency relationship which may have existed between them was thereupon terminated. Having used only a portion of their tickets, plaintiffs were entitled to a refund, whether they had purchased their tickets from Comet or across a BOAC counter. They chose to deal directly with BOAC, as a disclosed principal, to ask for a refund. They did not deal with Comet and it was not necessary for plaintiffs to return tickets through the travel agency, as BOAC’s acceptance implies; nor was it “ necessary ” for BOAC to return this money via Comet, except for their own convenience and sole benefit for accounting purposes to avoid the extra step of having to collect the commission Comet had retained on the ticket sale. Plaintiffs never authorized BOAC to remit the refund in this manner; Comet was not authorized to receive this payment; plaintiffs in no way held out Comet as their agent for this purpose.
Assuming arguendo that an agency relationship between plaintiffs and Comet continued after the initial sale of the tickets, this would not per se justify BOAC’s refund payment since “ an agent has no authority to receive payment merely because of the fact that he represented the principal in the transaction out of which the debt arose” (Restatement 2d, Agency, § 71, comment a; see, also, 12 Am. Jur. 2d, Brokers, § 79). Payment to a party who has no authority, actual or apparent, to receive it does not discharge the debtor. (Crane v. Gruenewald, 120 N. Y. 274 [1890] ; see Smith v. Kidd, 68 N. Y. 130 [1877] ; cf. 2 N. Y. Jur., Agency, § 124, 3 Am. Jur. 2d, Agency ; § 130, Restatement 2d, Agency, § 71.)
*770 Accordingly, summary judgment is granted against defendant, British Overseas Airways Corporation and against defendant Leo Lazar, doing business as Comet Travel Agency, by default, and judgment may be entered in favor of the plaintiffs for the relief demanded in the complaint.