OPINION OF THE COURT
Anil C. Singh, J.
Jerry Rottman has brought this small claims action against defendant El A1 Israel Airlines for breach of contract for bumping him from its flight and not arranging alternative transportation. El A1 denies liability.
*886 Rottman purchased airline tickets through a travel agent for travel between Baltimore, Maryland, and Israel on March 29, 2007. The agent booked Rottman on an American Airlines flight that left Baltimore/Washington International Airport (BWI) at 1:50 p.m. and arrived at John F. Kennedy Airport at 2:50 p.m. Rottman was booked on El Al’s 5:05 p.m. flight to Israel.
Rottman testified that after arriving from Baltimore on the American Airlines flight, he proceeded to the El Al terminal. There was a long security line. He went to the front of the line and showed his ticket to airport personnel. He was told that he was too late to make the flight! He was directed to another line, and the El Al representative advised him that all the flights were overbooked and that he had only a 10% chance of getting on a flight to Israel before the start of Passover. Rottman testified further that he had no knowledge of El Al’s time requirement protocols for check-in.
Rottman was able to reserve a seat on a Swissair flight that left New York for Tel Aviv on April 1, 2007. He paid $2,945.40 for the one-way ticket. Rottman testified that he incurred additional expenses of $340 for lodging, transportation and food as a result of the three-day layover in New York City.
Claimant testified further that although he had some trouble with the airline, he was able to utilize the return leg of the El Al ticket.
Peter Ninger, an employee of El Al, testified on behalf of defendant. He had no personal knowledge of the facts. His testimony was based on El Al’s computer records regarding claimant’s reservation (defendant’s exhibit C in evidence). The flight was called for check-in at approximately 4:00 p.m. Rottman had not checked in. At this time, the flight was closed for check-in. Rottman was deemed a “no show” and forfeited his seat on the flight. Ninger conceded that the 5:05 p.m. flight was overbooked by 17 seats. There was also a 7:25 p.m. flight. Ninger did not know whether this flight was overbooked as well.
Moreover, Ninger stated that Rottman did not comply with a condition of the contract which required passengers to check in at least three hours prior to departure. This requirement was in El Al’s “system.” A copy of the computer page was introduced in evidence as defendant’s exhibit B. Mr. Ninger testified that claimant could not have made the flight. He needed to check in at El Al by 2:15 p.m. The flight from BWI did not arrive until *887 2:50 p.m. He testified further that travel agents were authorized to sell tickets for El A1 flights, were independent agents, and were required to follow El Al’s rules.
Claimant has failed to establish that El A1 breached its contract by overbooking the flight and not offering him alternative transportation. Rottman arrived at the El A1 terminal less than an hour before departure. By this time, the flight was closed, and El A1 properly refused him passage.
However, the court’s inquiry does not end here. The ticket issued by the travel agent to Rottman made it impossible for him to comply with El Al’s rule requiring a minimum of three hours for check-in. Defendant’s position is that it is not responsible for the travel agent’s writing of Rottman’s ticket.
Liability in this case rests on whether the travel agent who issued Rottman’s ticket is an agent of the airline or an independent contractor. The Restatement of Agency suggests that airlines and travel agents stand in a principal/agent relationship. “Analogizing them to insurance agents, travel agents have been characterized as the agents of airlines and other service providers for whom they issue tickets to customers” (Restatement [Third] of Agency § 3.14, Reporter’s Notes [2006]).
For example, in Rappa v American Airlines (87 Misc 2d 759 [Civ Ct, Queens County 1976, Hentel, J.]), the Civil Court held that an airline was liable for a refund to a passenger after the failure of the travel agent who sold the ticket. The court wrote:
“In view of the provisions of the ATC Sales Agency Agreement, the court distinctly feels that defendant [airline] was most willing to accept all of the benefits under the agreement, including the promotion and sale of its transportation facilities, but was unwilling to accept any possible disadvantages which might arise. It called the travel agent under the agreement its agent; it clothed the agent with authority to issue tickets on its behalf, and made the agent its depository for the proceeds of ticket sales. It held itself out, for all intents and purposes, as the principal with whom the unwary customer was actually dealing. It cannot now retire behind a curtain of limited liability on the theory that one, such as Dallys [travel agency], was its own independent contractor and *888 broker serving the interests only of itself and its customers when, in fact, such agent was serving the primary interests of the carrier involved.” (Rappa, 87 Misc 2d at 763.)
The court denied the airline’s motion to dismiss the passenger’s complaint and, on its own motion pursuant to CPLR 3212, entered summary judgment in favor of the passenger.
In Levine v British Overseas Airways Corp. (66 Misc 2d 766 [Civ Ct, NY County 1971, Kassal, J.]), the Civil Court recognized that a travel agent may act as agent for both the traveler and the provider of travel services. Plaintiffs purchased tickets from Comet Travel Agency for a British Overseas Airways Corporation (BOAC) flight. Subsequently, plaintiffs sent two unused portions of tickets directly to the airline for a refund. The airline did not send the refund to plaintiffs, but sent it instead to the travel agency. When plaintiffs failed to receive payment from the agency, they sued both the airline and the travel agency. The Civil Court granted plaintiffs’ motion for summary judgment against both the airline and the travel agency, stating:
“In my opinion, once plaintiffs’ initial purchase of the tickets from Comet had been satisfactorily completed, any possible agency relationship which may have existed between them was thereupon terminated. Having used only a portion of their tickets, plaintiffs were entitled to a refund, whether they had purchased their tickets from Comet or across a BOAC counter. They chose to deal directly with BOAC, as a disclosed principal, to ask for a refund. They did not deal with Comet and it was not necessary for plaintiffs to return tickets through the travel agency, as BOAC’s acceptance implies; nor was it ‘necessary’ for BOAC to return this money via Comet, except for their own convenience and sole benefit for accounting purposes to avoid the extra step of having to collect the commission Comet had retained on the ticket sale.” (Levine, 66 Misc 2d at 769.)
Here, the travel agent who was bound by El Al’s rules pertaining to the sale of tickets was acting as the agent of the airline when it sold Rottman the ticket for travel to Israel. The principal, El Al, is responsible for the agent’s error in writing a ticket for the first leg of the journey that did not comply with the airline’s rules. As a result of the error, Rottman was *889 required to pay an additional $2,945.40 for a one-way ticket. He is awarded the cost of the ticket. The claim for damages relating to the additional expenses Rottman states he incurred is dismissed for failure of proof.
Ordered that the Clerk of the Court enter a judgment in favor of claimant and against defendant in the sum of $2,945.40, with interest from April 1, 2007, together with costs and disbursements as taxed by the Clerk.